UNITED STATES of America, Plaintiff-Appellee,

v.

Dale MURRAY, Paul Leahey, Ronald Vanderbosch, Lawrence Tower, and Linton Sherlock, Defendants-Appellants.

Nos. 326, 338–341, Dockets 79–1177, 79–1207 and 79–1261–3.

United States Court of Appeals, Second Circuit.

Argued Nov. 5, 1979.

Decided Jan. 30, 1980.

---

John P. Maley, Burlington, Vt. (Sylvester & Maley, Burlington, Vt., of counsel), for defendant-appellant Murray.

Stephen S. Blodgett, Burlington, Vt. (Blodgett & McCarren, Burlington, Vt., McCarty & Rifkin, Brattleboro, Vt., Daniel S. Triggs, Milton, Vt., of counsel), for defendants-appellants Leahey, Vanderbosch and Tower.

Michael J. Whelton, East Hartford, Conn., for defendant-appellant Sherlock.

Karen McAndrew, Asst. U. S. Atty., Burlington, Vt. (William B. Gray, U. S. Atty., for the District of Vermont, Jerome F. O'Neill, Asst. U. S. Atty., Rutland, Vt., on brief), for plaintiff-appellee.

Before FEINBERG, MANSFIELD, Circuit Judges, and MISHLER, Chief District Judge.*

FEINBERG, Circuit Judge:

Dale Murray, Paul Leahey, Ronald Vanderbosch, Lawrence Tower and Linton Sherlock appeal from judgments entered after a thirteen-day jury trial before Albert W. Coffrin, J., in the United States District Court for the District of Vermont, convicting them of conspiracy to import and to distribute cocaine and marijuana, in violation of 21 U.S.C. §§ 846 and 963. Appellants make various claims of error with respect to the form of the indictment, the selection of the jury, the evidence and the verdict. For reasons given below, we find that appellants' arguments are without merit, and we affirm the judgment of the district court.

## I. The Facts

The indictment, filed in August 1978, charged the five appellants and ten others [1] with one count of conspiracy to import and

---

* Honorable Jacob Mishler, Chief Judge of the Eastern District of New York, sitting by designation.

1. The other indicted conspirators were Horst Lakits, Peter Francis, Allan Brickman, Larry Lyon, Ival Stratford, Kenneth Friedenbach, James Southard, Serge Vernet, William Capron and John Watts.

to distribute cocaine and marijuana from 1972 until 1978. Seven of the defendants pled guilty before or during the trial; one of the alleged conspirators remains a fugitive.[2] The trial commenced in January 1979 and on February 2, 1979, the jury returned a general verdict of guilty as to the seven remaining defendants; for sentencing purposes only, Judge Coffrin also submitted special interrogatories to the jury that required it to advise the court whether each defendant found guilty participated in the conspiracy knowing that it involved marijuana only, cocaine only, or both marijuana and cocaine.[3] The jury found that all appellants, with the exception of Linton Sherlock, were guilty of participating in the conspiracy with knowledge it involved marijuana as well as cocaine.[4]

At trial, the government introduced evidence that allowed the jury reasonably to find the following: In the fall of 1972, Horst Lakits, one of the indicted conspirators, arrived in Connecticut and contacted Alan Pagano, who later testified for the government. Lakits had with him approximately three and one-half pounds of cocaine that he wanted to sell. After telling Lakits that he knew someone who might be interested, Pagano spoke with Albert Calamia, who also testified for the government. Shortly thereafter, Lakits sold a portion of the cocaine at a meeting attended by Peter Francis, another indicted conspirator, and by Pagano and Calamia, among others; Calamia acted as the "middleman" for the deal. In the summer of 1973, Lakits introduced Pagano and Calamia to his "business associate," appellant Dale Murray. At that time, Murray and Lakits "fronted" approximately 50 pounds of marijuana to Calamia and Pagano; Calamia sold approximately 25 to 30 pounds of that marijuana to Francis. Appellant Murray made a sale of cocaine to Pagano approximately six months later, and sold significant quantities of both marijuana and cocaine to Calamia during 1974–1975. Calamia in turn sold cocaine to other conspirators, including appellants Ronald Vanderbosch and Sherlock.

---

2. Allan Brickman's trial was severed for health reasons, and he subsequently pled guilty. Stratford, Lyon and Capron pled guilty before trial. Francis, Watts and Vernet pled guilty during the trial. Lakits remains a fugitive.

3. The verdict form submitted to the jury read as to each defendant:

> Do you find defendant _____ to be guilty or not guilty? ____
> If you have found defendant _____ to be guilty, answer each of the following questions yes or no:
> (a) Did his participation in the conspiracy involve marijuana? ____
> (b) Did his participation in the conspiracy involve cocaine? ____
> Obviously if you answer "yes" to both (a) and (b) you have found that his participation in the conspiracy involved both marijuana and cocaine.

While we have indicated that special verdicts are improper in a criminal case, see *United States v. Adcock*, 447 F.2d 1337, 1339 (2d Cir.) (per curiam), cert. denied, 404 U.S. 939, 92 S.Ct. 278, 30 L.Ed.2d 252 (1971); cf. *United States v. Gallishaw*, 428 F.2d 760, 764–66 (2d Cir. 1970), we have recognized that it is not error to obtain special findings from the jury where, as here, the information sought is relevant to the sentence to be imposed. See *United States v. Stassi*, 544 F.2d 579, 583–84 (2d Cir. 1976), cert. denied, 430 U.S. 907, 97 S.Ct. 1176, 51 L.Ed.2d 582 (1977).

4. Appellants were sentenced as follows: Dale Murray received seven years' imprisonment followed by a three-year special parole term; Paul Leahey received six years' imprisonment followed by a three-year special parole term; Ronald Vanderbosch received five years' imprisonment and a three-year special parole term; Vanderbosch also is serving a District of Connecticut consecutive sentence of two years' imprisonment followed by a three-year special parole term imposed on May 17, 1979 for conspiracy to distribute schedule I and II controlled substances. Imposition of sentence on Lawrence Tower and Linton Sherlock was suspended. Sherlock was placed on probation for three years and fined $500.00; Tower was placed on probation for five years.

In late 1975 and early 1976, Calamia and appellants Murray, Vanderbosch and Lawrence Tower, in collaboration with other indicted conspirators, made an abortive attempt to smuggle three kilograms of cocaine into the United States from Colombia; appellant Paul Leahey contributed financially to this Colombian venture. In March 1976, Calamia and appellant Murray finally succeeded in smuggling the cocaine into this country. Calamia subsequently sold a total of 16 ounces of the cocaine to appellant Leahey, and varying amounts to other conspirators. Early in January 1977, Calamia began cooperating with the Drug Enforcement Administration (DEA), and he was the government's main witness at trial.

## II. The Indictment

The single count indictment charged appellants with a conspiracy to import and to distribute cocaine and marijuana. Under the Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. § 801 et seq. ("the Act"), conspiracy to import controlled substances and conspiracy to distribute such substances are made punishable by separate sections. Compare 21 U.S.C. § 963 (conspiracy to import) with 21 U.S.C. § 846 (conspiracy to distribute). Appellants contend that the indictment in this case therefore charged two separate offenses in the same count and was duplicitous, requiring dismissal of the indictment. See Fed.R. Crim.P. 8(a) (requiring that there be "a separate count for each offense" charged in the indictment); 8 Moore's Federal Practice ¶ 8.03, at 8–6 (2d ed. 1979) (discussing duplicity).

█ Important policy considerations underlie the rule that two or more distinct crimes should not be alleged in a single count of an indictment. If an indictment is duplicitous, a general verdict of guilty will not reveal whether the jury found defendant guilty of only one crime and not the other, or guilty of both. See *Gerberding v. United States*, 471 F.2d 55, 59 (8th Cir. 1973). Moreover, a guilty verdict on a duplicitous indictment does not indicate whether the jury found defendant guilty without having reached an unanimous verdict on the commission of a particular offense. Thus, the prohibition of duplicity is said to implicate a defendant's rights to notice of the charge against him, to a unanimous verdict, to appropriate sentencing and to protection against double jeopardy in a subsequent prosecution. See *United States v. UCO Oil Co.*, 546 F.2d 833, 835 (9th Cir. 1976), cert. denied, 430 U.S. 966, 97 S.Ct. 1646, 52 L.Ed.2d 357 (1977); cf. *United States v. Gipson*, 553 F.2d 453, 456–59 (5th Cir. 1977); see generally Comment, *United States v. Gipson*: Duplicity Denies Right to Unanimous Verdict, 1978 Det.C.L. Rev. 319; 8 Moore, supra, at 8–6 to –7. On the other hand, the allegation in a single count of the commission of a crime by several means should be distinguished from the allegation of several offenses in the same count. Although drawing the line between these two concepts may be difficult in practice, in theory the latter type of allegation is duplicitous, while the former is not. See *United States v. Viserto*, 596 F.2d 531, 538–39 (2d Cir.), cert. denied, 444 U.S. 841, 100 S.Ct. 80, 62 L.Ed.2d 52 (1979); *United States v. UCO Oil Co.*, supra, 546 F.2d at 835–38; *United States v. Tanner*, 471 F.2d 128, 138–39 (7th Cir.), cert. denied, 409 U.S. 949, 93 S.Ct. 269, 34 L.Ed.2d 220 (1972); *United States v. Lennon*, 246 F.2d 24, 27 & n.4 (2d Cir.), cert. denied, 355 U.S. 836, 78 S.Ct. 60, 2 L.Ed.2d 48 (1957).

█ The application of these doctrines to conspiracy indictments poses unique issues, for a single agreement may encompass multiple illegal objects. However, it is well established that "[t]he allegation in a single count of a conspiracy to commit several crimes is not duplicitous, for 'The conspiracy is the crime and that is one, however diverse its objects.'" *Braverman v. United States*, 317 U.S. 49, 54, 63 S.Ct. 99, 102, 87 L.Ed. 23 (1942) (quoting *Frohwerk v. United States*, 249 U.S. 204, 210, 39 S.Ct. 249, 252, 63 L.Ed. 561 (1919)). *Braverman* itself is not necessarily dispositive of the question raised by appellants here, however, because the Court stressed that the conspiracy charged in that case violated "but a single statute," and hence only a single penalty

could be imposed on the conspirators. *Braverman v. United States*, supra, 317 U.S. at 54, 63 S.Ct. at 102. Here, in contrast, the conspiracy alleged violated two statutory sections, 21 U.S.C. §§ 846 and 963. Arguably, it was Congress' intent to punish a conspiracy to import and to distribute controlled substances twice as severely as a conspiracy to do either alone. Cf. *Sanabria v. United States*, 437 U.S. 54, 74 n.33, 98 S.Ct. 2170, 2184, 57 L.Ed.2d 43 (1978); *American Tobacco Co. v. United States*, 328 U.S. 781, 787–88, 66 S.Ct. 1125, 1128, 90 L.Ed. 1575 (1946). Appellants argue that if Congress in fact intended to make conspiracy to import and conspiracy to distribute separately punishable crimes, then it would be duplicitous to allege violations of §§ 846 and 963 in a single count. Cf. *United States v. Orzechowski*, 547 F.2d 978, 986–87 (7th Cir.), cert. denied, 431 U.S. 906, 97 S.Ct. 1701, 52 L.Ed.2d 391 (1977).

■ The issues thus posed have been raised more frequently in the context of a claim of multiplicity, i. e., that the same offense is charged in separate counts, thereby impermissibly punishing a defendant twice for the same conduct. The circuits are in conflict over whether Congress intended to multiply punishments for participation in a single conspiracy embracing both importation and distribution. Three circuit courts have held that it is not multiplicitous to allege violations of 21 U.S.C. §§ 846 and 963 in separate counts, on the ground that Congress regarded conspiracy to import and conspiracy to distribute not only as separate offenses, but as offenses "so compounding each other" that successive sentences could be imposed for participation in a conspiracy involving both objects. See *United States v. Garner*, 574 F.2d 1141, 1146–47 (4th Cir.), cert. denied,

439 U.S. 936, 99 S.Ct. 337, 58 L.Ed.2d 333 (1978); *United States v. Houltin*, 525 F.2d 943, 950–52 (5th Cir. 1976), vacated in part sub nom. *Croucher v. United States*, 429 U.S. 1034, 97 S.Ct. 725, 50 L.Ed.2d 744, modified, 553 F.2d 991 (5th Cir. 1977); *United States v. Marotta*, 518 F.2d 681, 684–85 (9th Cir. 1975). In contrast, two circuits have held that while it is not multiplicitous to charge violations of §§ 846 and 963 in separate counts, Congress did not intend to authorize courts to sentence defendants under both §§ 846 and 963 where there is proof of but a single conspiracy. See *United States v. Honneus*, 508 F.2d 566, 569–70 (1st Cir. 1974), cert. denied, 421 U.S. 948, 95 S.Ct. 1677, 44 L.Ed.2d 101 (1975); *United States v. Adcock*, 487 F.2d 637, 639–40 (6th Cir. 1973).[5] In a dictum, the *Honneus* court stated that where there is a single conspiracy both to import and to distribute, violation of both §§ 846 and 963 can be charged in a single count. 508 F.2d at 570. But for "practical reasons"—to avoid the need for, and the dangers consequent upon, a special verdict to aid in sentencing—the court held that the government was entitled to charge violations of these sections in separate counts, and then elect the count upon which it intended to proceed at the time of sentencing. Id.[6]

This conflict among the circuits highlights the difficulties of the issues thus raised, which we respectfully hope will be authoritatively resolved at a higher level before too long. For the present, however, we are of the view that the government's practice here does not call for reversal. If the doctrine of duplicity is to be more than an exercise in mere formalism, it must be invoked only when an indictment affects the policy considerations discussed above; because those policy considerations are not thwarted here, we conclude that the indict-

---

**5.** The First Circuit has followed *Honneus* in *United States v. Rivera Diaz*, 538 F.2d 461 (1st Cir. 1976). In *Diaz*, however, the court simply vacated the conviction on one of the conspiracy counts, since the sentences on the conspiracy counts were concurrent, not consecutive.

**6.** The indictment in *Honneus* also charged in a separate count that defendants engaged in a conspiracy to smuggle drugs in violation of the

general federal conspiracy statute, 18 U.S.C. § 371. See 508 F.2d at 569. But see *United States v. Corral*, 578 F.2d 570, 572 (5th Cir. 1978); *United States v. Mori*, 444 F.2d 240, 245 (5th Cir.), cert. denied, 404 U.S. 913, 92 S.Ct. 238, 30 L.Ed.2d 187 (1971).

ment was not duplicitous even though it charged a violation of two statutes in one count. Appellants do not claim that they did not have adequate notice of the charges against them; such a claim would have no merit in any event, since the government consistently alleged and proved but a single conspiracy. As for the argument that the jury verdict here does not reveal whether the jury found appellants guilty of violating only one statute or both, see *Gerberding v. United States*, supra, 471 F.2d at 59, appellants were not prejudiced; they were sentenced as if they had violated only one of the statutes, each of which in this instance carries the same penalties. Nor does this verdict raise the danger that appellants might be convicted of the same offense in a subsequent proceeding; indeed, the verdict forecloses the possibility that appellants might be tried again for participation in this conspiracy.

Finally, appellants were not deprived of their right to a unanimous verdict. See *United States v. UCO Oil Co.*, supra, 546 F.2d at 835. The essence of the crime of conspiracy is an agreement to put into effect an illegal project. Even if the agreement contemplates more than one nefarious end, there is still but a single agreement. See *Frohwerk v. United States*, supra, 249 U.S. at 210, 39 S.Ct. at 252. It was not improper for the government to have alleged in a single count that the conspiracy here involved two illegal substances.[7] See, e. g., *United States v. Moten*, 564 F.2d 620, 625 (2d Cir.) (single count charging a conspiracy involving cocaine and heroin), cert. denied, *Hightower v. United States*, 434 U.S. 942, 98 S.Ct. 438, 54 L.Ed.2d 304; *Moten v. United States*, 434 U.S. 959, 98 S.Ct. 489, 54 L.Ed.2d 318; *Foster v. United States*, 434 U.S. 974, 98 S.Ct. 531, 54 L.Ed.2d 466 (1977); *United States v. Bynum*, 485 F.2d 490, 495–97 (2d Cir. 1973) (same), vacated on other grounds, 417 U.S. 903, 94 S.Ct. 2598, 41 L.Ed.2d 209 (1974). We find no analytical difference between a

count charging that a conspiracy involved both cocaine and marijuana and a count charging that a conspiracy involved both importation and distribution. If the former allegation does not contravene the policies furthered by the duplicity doctrine, then the latter is equally permissible. Although defendants stress that two separate conspiracy statutes are involved here, we do not regard that fact as controlling. When an indictment charges a conspiracy to violate two statutes, the jury may find the defendant guilty if it believes beyond a reasonable doubt that he conspired to violate either one of the statutes. See *United States v. Wilkinson*, 601 F.2d 791, 796 (5th Cir. 1979); *United States v. Bolts*, 558 F.2d 316, 325–26 (5th Cir. 1977), cert. denied, 434 U.S. 930, 98 S.Ct. 417, 54 L.Ed.2d 290 (1977), 439 U.S. 898, 99 S.Ct. 262, 58 L.Ed.2d 246 (1978); *United States v. O'Looney*, 544 F.2d 385, 391 (9th Cir.), cert. denied, 429 U.S. 1023, 97 S.Ct. 642, 50 L.Ed.2d 625 (1976); cf. *United States v. Arroyo*, 494 F.2d 1316, 1318–19 & nn.7 & 8 (2d Cir.), cert. denied, 419 U.S. 827, 95 S.Ct. 46, 42 L.Ed.2d 51 (1974). Under the instructions given here, we find no reason to doubt that the jury unanimously found that there was a conspiracy to violate at least one of the statutes, and that each defendant participated in that conspiracy. See *United States v. Friedman*, 445 F.2d 1076, 1084 (9th Cir.), cert. denied, 404 U.S. 958, 92 S.Ct. 326, 30 L.Ed.2d 275 (1971). The circumstances here simply do not justify an inquiry "into the logic behind the jury's verdict," see *United States v. Gipson*, supra, 553 F.2d at 457; cf. *United States v. Wilkinson*, supra, 601 F.2d at 796 n.5. As we have stated in a related context, "[i]t is assumed that a general instruction on the requirement of unanimity suffices to instruct the jury that they must be unanimous on whatever specifications they find to be the predicate of the guilty verdict." *United States v. Natelli*, 527 F.2d 311, 325 (2d Cir. 1975), cert. denied, 425 U.S. 934, 96

---

7. This argument was apparently the only basis for defendants' pre-trial motion to strike the indictment as duplicitous. It was not duplicitous to allege in a single count that the conspir-

acy involved both cocaine and marijuana, and therefore the trial court properly denied the motion to strike.

S.Ct. 1663, 48 L.Ed.2d 175 (1976). See *United States v. Friedman*, supra, 445 F.2d at 1076.

Ironically, if appellants' argument were taken to its logical conclusion, the result might be that defendants would be subject to double punishment for a conspiracy involving both importation and distribution. See, e. g., *United States v. Garner*, supra, 574 F.2d at 1146–47; *United States v. Houltin*, supra, 525 F.2d at 950–52; *United States v. Marotta*, 518 F.2d at 684–85. But that problem is not before us, and we express no view on whether we agree with those cases or, contrariwise, with the opinion of the First Circuit in *Honneus*. The indictment charges only one agreement in one count, and the district judge did not err in allowing it to go to the jury.[8]

### III. The Jury

■ Appellants contend that they were denied their right to an impartial jury by the district court's refusal to excuse one of the prospective jurors for cause. In response to voir dire questioning, prospective juror Mrs. Morin stated that she was "against drugs" and that she had "a nephew that was on drugs." In reply to further questions from the bench, however, Mrs. Morin made clear that her feelings about drugs would not affect her judgment, and that she would determine the case solely on the evidence presented. Nonetheless, appellants contend that because Mrs. Morin later stated, under questioning from defense counsel, that she could not "guarantee" that her feelings about drugs would not affect her judgment in the case, the trial court erred in not granting defendants' challenge for cause.

As we stated in *United States v. Ploof*, 464 F.2d 116, 118 n.4 (2d Cir.), cert. denied, 409 U.S. 952, 93 S.Ct. 298, 34 L.Ed.2d 224 (1972), "[t]here are few aspects of a jury trial where we would be less inclined to disturb a trial judge's exercise of discretion, absent clear abuse, than in ruling on challenges for cause in the empanelling of a jury." There was no such "clear abuse" in this case. While it is true that Mrs. Morin indicated that she could not "guarantee" or "assure [the defendants] one hundred percent" that her feelings about drugs would not enter into the case, it is the rare juror who could honestly "guarantee" that his feelings about the particular type of crime alleged would in no way affect his deliberations. That Mrs. Morin—like many other citizens—was opposed to the unlawful use of drugs does not necessarily imply that she was incapable of impartially judging these defendants. The crucial fact is that Mrs. Morin, like the prospective juror in *Ploof*, stated in effect that she would do her best to determine the case on the evidence presented. See id. at 118 & n.3; *United States v. Tramunti*, 513 F.2d 1087, 1114 (2d Cir.), cert. denied, 423 U.S. 832, 96 S.Ct. 54,

8. In addition, we note that appellants apparently failed to make a timely objection that the indictment was duplicitous in that it alleged violations of §§ 846 and 963 in a single count. See n.7 supra. Under Fed.R.Crim.P. 12(b)(2), objections based on defects in the indictment must be raised prior to trial. See, e. g., *Davis v. United States*, 411 U.S. 233, 243, 93 S.Ct. 1577, 1583, 36 L.Ed.2d 216 (1973); *United States v. Rodriguez*, 556 F.2d 638, 641 (2d Cir. 1977), cert. denied, 434 U.S. 1062, 98 S.Ct. 1233, 55 L.Ed.2d 762 (1978). We have so held specifically with regard to objections to an indictment on the grounds of duplicity. See *United States v. Viserto*, 596 F.2d 531, 538–39 (2d Cir.), cert. denied, 444 U.S. 841, 100 S.Ct. 80, 62 L.Ed.2d 52 (1979); *United States v. Droms*, 566 F.2d 361, 363 (2d Cir. 1977) (per curiam); *United States v. Galgano*, 281 F.2d 908, 911 (2d Cir. 1960), cert. denied, 366 U.S. 967, 81 S.Ct. 1916, 6 L.Ed.2d 1253 (1961); see generally 8 Moore's Federal Practice, supra, ¶ 8.04 at 8–12. We recognize that some of counsel's remarks at the charge conference could be construed as raising the duplicity objection now pressed before us; we also note that in two of the cases just cited we stated that the objection as to duplicity must be made at least prior to the verdict. See *United States v. Droms*, supra, 566 F.2d at 363; *United States v. Galgano*, supra, 281 F.2d at 911. However, in neither case was it necessary to the decision to hold that an objection raised after the trial had begun was timely, since in neither case was any objection raised at all at the trial court level. Particularly in view of the holding in *Davis v. United States*, supra, 411 U.S. at 243, 93 S.Ct. at 1583, we would be slow to conclude that a Rule 12(b)(2) motion based upon duplicity not made until just prior to submission to the jury is timely.

46 L.Ed.2d 50 (1975). Judge Coffrin was in the best position to judge the impartiality of Mrs. Morin, see 464 F.2d at 118, and he acted within his broad discretion in denying the challenge for cause.

Moreover, appellants do not allege any specific instance of prejudice arising from the trial court's ruling. See *Mikus v. United States*, 433 F.2d 719, 722–23 (2d Cir. 1970). Prospective juror Morin was excused by defendants' exercise of one of their peremptory challenges, and accordingly she did not serve. As in *Mikus*, "no juror's name is cited, for example, to indicate that but for the trial judge's rulings, appellant was forced to accept a juror against his interests." 433 F.2d at 723. This lack of prejudice buttresses our conclusion that there was no error in the jury selection process.

### IV. The Evidence

#### A. Evidentiary Rulings

■ Appellant Leahey claims that his Sixth Amendment right to confrontation was abridged by the introduction into evidence of a tape recording of a January 1976 conversation between appellant and one James Parrot, who was at that time cooperating with the DEA. In the conversation, Parrot discussed the possibility of purchasing cocaine from Leahey in a manner that also suggested that Parrot and Leahey had had drug-related dealings in the past. Parrot's whereabouts were unknown at the time of trial, and the tape was introduced through the testimony of a DEA special agent. Appellant Leahey contends that the admission of the tape was erroneous, since he was unable to cross-examine Parrot on the statements the latter made during the conversation.

In admitting the evidence, the district judge relied on the opinion of the District of Columbia Circuit in *United States v. Lemonakis*, 158 U.S.App.D.C. 162, 168–71, 485 F.2d 941, 947–50 (D.C. Cir. 1973), cert. denied, 415 U.S. 989, 94 S.Ct. 1586, 39 L.Ed.2d 885 (1974). We agree with the reasoning of that case. Contrary to appellant's arguments, Parrot's taped statements are not analogous to those "*ex parte* affida-

vits or depositions" against which the confrontation clause was designed to guard. See *California v. Green*, 399 U.S. 149, 156, 90 S.Ct. 1930, 1934, 26 L.Ed.2d 484 (1970). Parrot's statements were admitted for the limited purpose of placing appellant Leahey's remarks in their proper context; Judge Coffrin carefully instructed the jury that they were not to consider Parrot's statements for their truth except to the extent that appellant adopted them. Thus, in contrast to an ex parte affidavit, Parrot's statements here were part of a "reciprocal and integrated" conversation with appellant, see *United States v. Lemonakis*, supra, 485 F.2d at 948 (quoting *United States v. Metcalf*, 430 F.2d 1197, 1199 (8th Cir. 1970)). Moreover, unlike such affidavits, Parrot's statements were expressly offered not for their own truth, but to provide the context for appellant's own admissions. The admission of the tape under these circumstances did not violate appellant's Sixth Amendment right "to be confronted with the witnesses against him."

■ Appellant Linton Sherlock also alleges error in allowing Serge Vernet, a defendant who pled guilty at trial, to testify that sometime in 1975 appellant Sherlock showed him a garbage bag full of marijuana. Appellant argues that this evidence was designed only to establish his bad character, and that it was therefore inadmissible under Fed.R.Evid. 404(b). He contends also that he was "unfairly surprised" by the introduction of this testimony, since the government had informed him prior to trial that it knew of, and intended to introduce, no "other crimes" evidence against appellant.

The government offered Vernet's testimony to establish that appellant Sherlock had both the opportunity and the intent to distribute large quantities of drugs. Under Rule 404(b), these are permissible purposes for the introduction of evidence of other crimes. The trial court gave proper limiting instructions with regard to the use the jury could make of this "other crimes" evidence. Significantly, the special verdict reveals that the jury found appellant Sher-

lock guilty of conspiracy with regard to cocaine but not marijuana; this strongly suggests that the jury understood the court's instructions on this issue.

Appellant's further contention that he was unfairly surprised by Vernet's testimony is likewise unfounded. Vernet was a defendant until one week into the trial; even after he pled guilty, he refused to cooperate until the government provided him with an immunity order. A review of the record makes clear that the government advised appellant Sherlock of this anticipated testimony almost immediately after the government itself learned of it. There was no improper conduct on the part of the government in connection with the introduction of this evidence.

### B. Burden of Proof

■ Appellants argue that the government failed to carry its burden of proof, since it failed to prove that defendants did not fall within any of the narrow exemptions or exceptions to the Comprehensive Drug Abuse Prevention and Control Act of 1970. The Act provides that it is unlawful to "knowingly or intentionally" distribute or possess with intent to distribute a controlled substance "[e]xcept as authorized by this subchapter." 21 U.S.C. § 841. Authorization to distribute is obtained by registration with the Attorney General. See 21 U.S.C. § 822. In addition, three classes of persons are exempted from the registration requirements, and may lawfully possess any controlled substance: agents or employees of registered manufacturers, distributors or dispensers; common carriers in the usual course of business; and ultimate users who possess the substance for a purpose specified in § 802(25). See 21 U.S.C. § 822(c). Similarly, the importation of controlled substances is made illegal unless the importer has registered with the Attorney General, or falls within certain enumerated exemptions to the registration requirement. See 21 U.S.C. §§ 957(a) (forbidding importation unless importer is registered); 957(b) (exempting agents or employees, common carriers and ultimate users); 960 (criminal penalties for unlawful importation). Appellants contend that the Act makes non-registration and non-exemption from registration essential elements of the substantive offenses underlying the conspiracy charged here; accordingly, they assert, due process requires that the government allege and prove both non-registration and non-exemption from registration.

This claim is without merit. The Act specifically provides that "[i]t shall not be necessary for the United States to negative any exemption or exception" set forth in subchapter I or II: "the burden of going forward with the evidence with respect to any such exemption or exception shall be upon the person claiming its benefit." See 21 U.S.C. §§ 885(a)(1) and 965. Appellants failed to offer a shred of evidence at trial that they were entitled to the benefit of the Act's exemptions or exceptions, despite their "easier access to the underlying facts." Cf. *United States v. Carr*, 582 F.2d 242, 245–46 (2d Cir. 1978) (lack of authorization to use another's name not an element of the offense in prosecutions under 18 U.S.C. § 1014 for false loan applications). Indeed, appellants did not raise the claim they now make until after trial and do not suggest even now what exception or exemption is possibly applicable. The government thus had no duty to prove that appellants were neither registered nor exempted from registration. *United States v. Felts*, 602 F.2d 146, 148 (7th Cir. 1979); *United States v. Miranda*, 494 F.2d 783, 785–87 (5th Cir.), cert. denied, 419 U.S. 966, 95 S.Ct. 228, 42 L.Ed.2d 181 (1974); *United States v. Brown*, 482 F.2d 1226, 1229–30 (8th Cir. 1973). This statutory scheme does not offend due process, for the government bears the burden of proving non-registration or non-entitlement once the defendant introduces evidence that he falls within one of the statutory exemptions or exceptions. See *United States v. Rosenberg*, 515 F.2d 190, 198–99 (9th Cir.), cert. denied, 423 U.S. 1031, 96 S.Ct. 562, 46 L.Ed.2d 404 (1975); *United States v. Kelly*, 500 F.2d 72, 73–74 (7th Cir. 1974).

## C. Single v. Multiple Conspiracies

Appellants assert that there was a prejudicial variation between the indictment, which charged a single conspiracy, and the proof, which they allege showed several separate and independent conspiracies. Whether the government carried its burden of establishing the particular conspiracy charged in the indictment is "ordinarily a question of fact for the jury." See *United States v. Armedo-Sarmiento*, 545 F.2d 785, 789 (2d Cir. 1976), cert. denied, 430 U.S. 917, 97 S.Ct. 1330, 51 L.Ed.2d 595 (1977). As we stated in *United States v. Taylor*, 562 F.2d 1345, 1351 (2d Cir.), cert. denied, 432 U.S. 909, 97 S.Ct. 2958, 53 L.Ed.2d 1083 (1977), "[o]ur task on review is to determine whether the legal standard given to the jury by the trial court in its charge was correct and whether, viewing the proof in the light most favorable to the Government, there was sufficient evidence to permit the jury to find the conspiracy alleged."

Judge Coffrin's charge here set forth the correct legal standard. The charge was similar to that approved by this court in both *United States v. Tramunti*, supra, 513 F.2d at 1107 and *United States v. Taylor*, supra, 562 F.2d at 1351. Judge Coffrin told the jurors that they must determine first whether the government proved the single conspiracy alleged and then whether each defendant was a member of the single conspiracy charged, and not some other conspiracy. This charge was "clear, correct and within the decided cases," see id., and there is no serious claim to the contrary.

The remaining question is whether the evidence, viewed in the light most favorable to the government, was sufficient to permit the jury to find the single conspiracy alleged. Appellants argue that the proof shows only a series of casual, sporadic and independent transactions rather than a single overarching conspiracy. We disagree. While it is true that the conspiracy alleged extended over six years and involved numerous individuals and locations, a single conspiracy is "not transposed into a multiple one simply by lapse of time, . . .

change in membership, . . . or a shifting emphasis in its locale of operations . . . ." See *United States v. Armedo-Sarmiento*, supra, 545 F.2d at 790 (citing cases).

A common conspiratorial thread runs throughout the pattern of illegal activity established by the government's proof in this case, beginning with the 1972 cocaine transaction directly involving Lakits, Francis, Pagano and Calamia, and continuing through the big South American cocaine deal in which almost all of the appellants played a part. The government adduced evidence of a "loosely knit, vertically-integrated" combination, see *United States v. Panebianco*, 543 F.2d 447, 452–53 (2d Cir. 1976), cert. denied, 429 U.S. 1103, 97 S.Ct. 1128, 51 L.Ed.2d 553 (1977), with a "common source of supply." See *United States v. Taylor*, supra, 562 F.2d at 1351. There can be no doubt that there was "mutual dependence and assistance" among the parties. *United States v. Tramunti*, supra, 513 F.2d at 1106. Taken as a whole, there was ample evidence to justify the jury's conclusion that a single conspiracy existed here.

## D. Sufficiency of the Evidence: Vanderbosch, Tower and Sherlock

Appellants Vanderbosch and Tower argue that there was insufficient evidence at trial to convict them of conspiracy to import and to distribute marijuana. These appellants assert there was absolutely no evidence of any agreement on the part of either to import or distribute marijuana. Moreover, according to appellants, there is no evidence that the conspiracy was engaged in importing or distributing marijuana during or after the time they allegedly became conspirators.

We have frequently noted that "one who deals in large quantities of narcotics may be presumed to know that he is a part of a venture which extends beyond his individual participation." See *United States v. Magnano*, 543 F.2d 431, 433–34 (2d Cir. 1976), cert. denied, 429 U.S. 1091, 97 S.Ct. 1100, 51 L.Ed.2d 536 (1977). In determining whether this inference of broader

knowledge is warranted, both the "nature of the enterprise" and appellant's relationship to it must be analyzed. Id. at 434. As discussed above, the "enterprise" here was a "loosely-knit" organization involved at various times with both marijuana and cocaine. We are satisfied from our review of the record that the jury could reasonably find that appellants Vanderbosch and Tower were aware of the broader scope of the conspiracy. In any event, even if the jury erred in this regard, the error was harmless. Judge Coffrin submitted special interrogatories to the jury, see note 3, supra, to determine whether each convicted defendant should be sentenced under the more severe penalties established for a conspiracy involving cocaine or the lesser penalties for a conspiracy involving marijuana. Compare 21 U.S.C. §§ 841(b)(1)(A) and 960(b)(1) with §§ 841(b)(1)(B) and 960(b)(2). The jury's special verdict found Vanderbosch and Tower guilty of conspiracy to import and distribute both cocaine and marijuana, and Judge Coffrin therefore sentenced these two appellants under the more severe penalties applicable to a conspiracy involving cocaine. Appellants were not prejudiced by the jury's conclusion that they also were guilty of conspiring with regard to marijuana.

Appellant Sherlock contends that there was insufficient evidence to sustain his conviction because his participation in the alleged conspiracy was limited to a single purchase of approximately five ounces of cocaine from Calamia in 1975. A single act may be "sufficient for an inference" that an individual is involved in a conspiracy, see United States v. Torres, 503 F.2d 1120, 1123 (2d Cir. 1974) (quoting United States v. DeNoia, 451 F.2d 979, 981 (2d Cir. 1971)); the "qualitative nature" of the act "viewed in the context of the entire conspiracy" determines whether that inference can be drawn in a particular case. 503 F.2d at 1124. Appellant asserts that such an inference cannot be drawn from the single act here, since this was a large conspiracy, see United States v. Tramunti, supra, 513 F.2d at 1112 n.27, and because the act here neither establishes that Sherlock

was a major purchaser, see 513 F.2d at 1112, nor shows that he was familiar with, or a high-level participant in, the overall conspiracy. See United States v. Torres, supra, 503 F.2d at 1124.

Judge Coffrin stated that the question of Sherlock's participation in the conspiracy was a close one, but we feel that the judge correctly determined it. Calamia testified that he acquired approximately two pounds of cocaine from appellant Murray in September and October 1975. After selling some of the cocaine to defendants Francis and Lyon and to appellant Vanderbosch, Calamia discussed the sale of cocaine with appellant Sherlock, whom he had first met in the early 1970's. Calamia then travelled to Sherlock's home, where he was met by Sherlock and one John Novak. Although Calamia was not entirely certain whether Sherlock or Novak was receiving the bulk of the cocaine, it was with Sherlock that he had discussed the sale, and it was from Sherlock that he received the purchase price of approximately $6,000 after Calamia and Sherlock had weighed the cocaine on a scale in Sherlock's bedroom. Significantly, Calamia testified that he was reluctant to deal with Novak, because he had "never dealt with him before," thus implying that Calamia had dealt in drugs with Sherlock before. The quantity of cocaine purchased by appellant was not insignificant in the context of drug traffic in Southern Vermont in 1975. The presence of a scale in appellant's bedroom under these circumstances also suggests that he was actively involved in the drug trade. Taken together, there was sufficient evidence for the inference that Sherlock was involved in the conspiracy charged.

## IV. The Verdict

All appellants argue that a colloquy between the judge and the jury late in the trial reveals that the jurors were so confused as to their responsibilities that their verdict should be impeached. On the fourth day of jury deliberations, one of the jurors asked the court whether the jury had to "find all defendants guilty" or whether

the jury was "supposed to consider [defendants] as individuals." Appellants properly concede that the court's instructions prior to this time had correctly stressed the importance of treating the defendants individually; they assert, however, that the judge's response to the juror's inquiry on the fourth day was so unclear as to compound the jury's confusion. Appellants stress that the jury deliberated for less than an hour following this colloquy as support for their argument that the jury was confused as to its responsibility.

We do not agree with appellants' reading of the record. When viewed as a whole, the colloquy suggests that the jurors wanted to clarify their responsibilities with regard to the special findings, see note 3, supra, that the court had submitted for sentencing purposes. In particular, the jurors wanted to know whether they could find the defendants guilty of a conspiracy involving cocaine and marijuana, and yet specify in the special findings that some defendants had been involved only with the cocaine aspect of the conspiracy. Moreover, even if one juror was still unaccountably confused on the need to treat each defendant individually, the judge's response was clear and correct on this issue. Less than an hour thereafter the jury returned its verdict; significantly, this was accompanied by a special finding that appellant Sherlock was not involved with marijuana. The brevity of the interval between the colloquy and the verdict thus in fact cuts against appellants, for it suggests that the jurors understood, and quickly acted upon, the trial judge's clarification of the role of the special interrogatories.

We conclude that all of appellants' arguments are without merit. The judgment of the district court is affirmed.