935 F.2d 196
 UNITED STATES of America, Plaintiff-Appellee,
v.
Uradell HILL, a/k/a Uradell Williams, a/k/a Uradell Jones,
a/k/a Uradell Ceasar, Eric Darwin Dobson, a/k/a
Eric Williams, a/k/a Eric Johnson, a/k/a
Hardrock Johnson, Defendants-Appellants.
 No. 89-6136.
 United States Court of Appeals,
Eleventh Circuit.
 July 5, 1991.
 
 Keith M. Krasnove, Keith M. Krasnove, P.A., Coral Springs, Fla., for defendants-appellants.
 Dexter W. Lehtinen, U.S. Atty., Miami, Fla., Neil Karadbil, Linda C. Hertz, Luis M. Perez, Lynne W. Lamprecht, Asst. U.S. Attys., W. Palm Beach, Fla., for plaintiff-appellee.
 Appeal from the United States District Court for the Southern District of Florida.
 Before HATCHETT and BIRCH, Circuit Judges, and RONEY, Senior Circuit Judge.
 HATCHETT, Circuit Judge:
 
 
 1
 This criminal drug case is affirmed based upon the district court's implicit ruling that the appellants had the burden of producing evidence to show that their importation of cocaine into the United States was permitted under authority granted to the Attorney General of the United States.
 
 FACTS
 
 2
 In July, 1986, David Cavenaugh, a pilot, met Jimmy Ceasar. In early 1987, Ceasar introduced Cavenaugh to Uradell Hill, one of the appellants. Ceasar and Hill told Cavenaugh they wanted to buy several kilograms of cocaine in Haiti and bring it to the United States. Cavenaugh told them he was not interested. Approximately one year later, Drug Enforcement Administration (DEA) officers arrested Fred Greyser, a friend of Cavenaugh's, on drug charges. In an effort to help Greyser get a more favorable sentence, Cavenaugh told DEA officers about Ceasar and Hill's interest in importing cocaine.
 
 
 3
 Cavenaugh then traveled to Haiti and found Ceasar, who put him in contact with Hill. Cavenaugh told Hill that he was prepared to do what she had asked him to do before. When he returned to the United States, Cavenaugh contacted DEA personnel, and at their request, called Eric Dobson, Hill's son (the other appellant). Cavenaugh and Dobson discussed importing cocaine into the United States.
 
 
 4
 On September 5, 1988, Cavenaugh and Dobson held a second conversation involving the importation of cocaine. Two days later, Cavenaugh met Dobson and Arthur James at an airport hotel in West Palm Beach, Florida. The three men decided that James would fly to Haiti the next morning with Cavenaugh to pay for the cocaine. Dobson immediately called Hill and informed her of the plans. The following day, James overslept. Cavenaugh called Hill, who contacted James so that James and Cavenaugh could leave as planned.
 
 
 5
 After arriving in Haiti, James and Cavenaugh met Ceasar, gave Ceasar money to pay for the cocaine, and later received the cocaine from Ceasar. Because DEA had not yet received the requisite governmental clearances to bring the cocaine into the United States, Cavenaugh told James that law enforcement officials were watching him in Port-Au-Prince, and that Cavenaugh would make arrangements to carry the cocaine out of Haiti at a later time. James and Cavenaugh flew back to the United States without the cocaine.
 
 
 6
 Once back in the United States, Cavenaugh participated in several three-way calls with Hill and Dobson to finalize arrangements for the final flight. On September 20, 1988, Cavenaugh flew alone to Haiti to pick up the previously purchased cocaine. By this date, DEA Agent Susan Ashcraft and U.S. Customs Agent Charles Dodge had made arrangements with U.S. Customs and DEA in Miami, as well as with the Haitian government, to permit entry of the cocaine into the United States from Haiti. In Haiti, Ceasar delivered fourteen kilograms of cocaine to Cavenaugh's hotel room. The next morning, Ceasar loaded the cocaine into a car and drove to the Cape Haitian airport. After Ceasar and Cavenaugh loaded the cocaine into Cavenaugh's plane, Cavenaugh flew to West Palm Beach while being followed by a U.S. Customs plane. DEA and U.S. Customs agents met Cavenaugh at the airport, searched the aircraft, and found thirteen kilograms of cocaine.[1] DEA agents substituted twelve bags of powder for twelve of the thirteen cocaine-filled bags.
 
 
 7
 Later that day, Cavenaugh met James and Dobson in the lobby of a hotel where James and Dobson gave Cavenaugh $15,000 in exchange for the keys to an automobile which contained the cocaine and the substituted powder-filled bags. Subsequent to the exchange, James, Dobson, and Hill were arrested.
 
 PROCEDURAL HISTORY
 
 8
 On October 25, 1988, a federal grand jury indicted Hill and Dobson on drug charges, including conspiracy to import over five kilograms of cocaine, in violation of 21 U.S.C. Secs. 952, 960, and 963, and importation of at least five kilograms of cocaine in violation of 21 U.S.C. Sec. 952 and 18 U.S.C. Sec. 2.
 
 
 9
 At trial, Ashcraft testified during cross-examination that she applied through channels of the Justice Department for permission to import the cocaine into the United States. She also testified that the head of the Justice Department is the Attorney General of the United States. Cavenaugh testified that in order to import the cocaine, clearance was required from both the United States government and the Haitian government. Cavenaugh also testified that before he brought the cocaine into the United States, he was told that he had the express approval of the United States government from a government office in Washington, D.C. At the close of the government's case, Hill and Dobson moved for directed verdicts of acquittal on the basis that the government failed to prove that the cocaine was not legally imported in accordance with regulations prescribed by the Attorney General. The district court denied the motions for directed verdicts of acquittal. At the close of all the evidence, the district court refused to instruct the jury along the lines that it could find the cocaine to have been imported lawfully.
 
 
 10
 The jury found Hill and Dobson guilty on all counts. Hill and Dobson filed motions for the district court to depart from the Sentencing Guidelines based on substantial cooperation, but the district court denied these motions. The district court sentenced Hill to 293 months of imprisonment, and Dobson to 240 months of imprisonment.
 
 CONTENTIONS
 
 11
 Hill and Dobson contend that the government failed to prove that the shipment of cocaine was not lawfully imported into the United States and that the evidence, therefore, is insufficient to support their convictions. Hill and Dobson also contend that the district court should have instructed the jury in accord with their theory that the cocaine was lawfully imported.
 
 
 12
 The government contends that the district court properly denied Hill and Dobson's motion for directed verdicts of acquittal and properly refused to instruct the jury according to Hill and Dobson's request because the evidence did not support the theory that the Attorney General authorized the importation of the cocaine.
 
 ISSUES
 
 13
 The issues are: (1) whether the district court properly denied Hill and Dobson's motions for directed verdicts of acquittal as to the importation of cocaine charge; and (2) whether the district court properly denied the jury instruction concerning the theory that Hill and Dobson's cocaine importation was excepted from criminal conduct pursuant to 21 U.S.C. Sec. 952(a)(2).
 
 DISCUSSION
 I. Motions for Acquittal
 
 14
 Title 21 U.S.C.A. Sec. 952 provides in pertinent part:(a) Controlled substances in schedules I or II and narcotic drugs in schedules III, IV, or V; exceptions
 
 
 15
 It shall be unlawful to import into the customs territory of the United States from any place outside thereof (but within the United States), or to import into the United States from any place outside thereof, any controlled substance in schedule I or II of subchapter I of this chapter, or any narcotic drug in schedule III, IV, or V of subchapter I of this chapter, except that--
 
 
 16
 ....
 
 
 17
 (2) such amounts of any controlled substance in schedule I or II or any narcotic drug in schedule III, IV or V that the Attorney General finds to be necessary to provide for the medical, scientific, or other legitimate needs of the United States--
 
 
 18
 (A) during an emergency in which domestic supplies of such substance or drug are found by the Attorney General to be inadequate,
 
 
 19
 (B) In any case in which the Attorney General finds that competition among domestic manufacturers of the controlled substance is inadequate and will not be rendered adequate by the registration of additional manufacturers under section 823 of this title, or
 
 
 20
 (C) in any case in which the Attorney General finds that such controlled substance is in limited quantities exclusively for scientific, analytical, or research uses,
 
 
 21
 may be so imported under such regulations as the Attorney General shall prescribe. No crude opium may be so imported for the purpose of manufacturing heroin or smoking opium.
 
 
 22
 (West Supp.1990). The regulations referred to by 21 U.S.C. Sec. 952(a)(2) are published in 21 C.F.R. Parts 1311 and 1312 (1990), and prohibit the importation of cocaine until the Administrator has issued a permit to the importer. 21 C.F.R. Sec. 1312.11(a).
 
 
 23
 The threshold issue--whether the government must go forward with evidence to negate an exception under the statute--is one of first impression in this circuit. The district court implicitly held that the appellants had to go forward with the production of evidence showing the applicability of a statutory exception.
 
 
 24
 In prosecutions under section 952(a), importation is one element of the offense which the government must prove. Two circuits, the Second and the Seventh, hold that proof that distribution of controlled substances was in accordance with regulations prescribed by the Attorney General is an affirmative defense with the burden of going forward with production of evidence on the defendant. United States v. Kelly, 500 F.2d 72, 74 (7th Cir.1974); United States v. Murray, 618 F.2d 892, 901 (2d Cir.1980); see 21 U.S.C. Secs. 885(a)(1) and 965. We adopt this view.
 
 
 25
 Title 21 U.S.C. Sec. 952, a section of the Comprehensive Drug Abuse Prevention and Control Act of 1970, is part of a law designed to unite all the various statutes referring to drug abuse in a comprehensive statutory scheme. See H.Rep. No. 91-1444, 91st Cong., 2d Sess., reprinted in 1970 U.S.Code Cong. & Admin.News 4566. It prohibits importation of controlled substances and narcotics listed in its schedules; but, it allows the Attorney General to issue regulations exempting individuals from its prohibitions for legitimate uses and purposes. Those legitimate purposes are listed in the statute. At the trial of this case, no evidence touched upon the statutory uses and purposes.
 
 
 26
 The appellants have not indicated any authority for or reason for this court to hold that in every importation case the government must prove beyond a reasonable doubt that the defendant did not import the controlled substance or narcotic drug pursuant to a permit issued by the Attorney General. We find no authority, and we find no reason to so hold. We hold, therefore, that the burden of going forward to prove a statutory exception is on the defendant. Once the defendant has produced clear and convincing evidence that the conduct fits within an exception, the burden of persuasion is on the government. See United States v. Murray, 618 F.2d 892, 901 (2d Cir.1980).[2]
 
 
 27
 Hill and Dobson contend that Ashcraft's and Cavenaugh's testimony concerning governmental permission to import the cocaine satisfied their burden of producing evidence to show that one of the exceptions listed in section 952(a)(2) applied to this case. Having met their burden of production, according to Hill and Dobson, the government had to prove the nonapplicability of the exception beyond a reasonable doubt. Because the government failed to do so, according to Hill and Dobson, the evidence is insufficient to support their importation convictions.
 
 
 28
 We disagree that Hill and Dobson have met their burden of production. It should not be difficult for defendants receiving authorization in accordance with the regulations to meet this evidence-production burden because they may present a copy of their import permit which is sent to them and which they are required to keep on file. See 21 C.F.R. Sec. 1312.14(a). In this case, because Hill and Dobson did not show by clear and convincing evidence that the Attorney General had authorized this importation in accordance with the regulations prescribed in 21 C.F.R. Parts 1311 and 1312, the district court did not err in denying the motions for directed verdicts of acquittal.
 
 II. Jury Instruction
 
 29
 A district court's refusal to give a requested jury instruction is reversible error only if the requested instruction is correct, is not adequately covered by the charge given, and deals with a point so important that failure to give the instruction seriously impaired the defendant's ability to present an effective defense. United States v. Sans, 731 F.2d 1521, 1529-30 (11th Cir.1984).
 
 
 30
 The district court instructed the jury on the law of importation according to the Pattern Jury Instructions of the Eleventh Circuit.[3] Hill and Dobson had requested an instruction stating that the laws against importation also required the government to prove that the cocaine was not imported pursuant to regulations prescribed by the Attorney General.[4] The district court denied the request and stated that
 
 
 31
 [t]he record is totally silent that any of these exceptions are applicable in this case, because there is no evidence in this record to support the fact that the controlled substance in question was imported pursuant to regulations prescribed by the Attorney General, or that the Attorney General ever consented thereto.
 
 
 32
 The district court refused to give the instruction for the same reason it denied the motions for directed verdicts of acquittal: Hill and Dobson had not met their burden of going forward with clear and convincing evidence to show that one of the exceptions of section 952(a) applied to their importation. See United States v. Russell, 717 F.2d 518, 521 (11th Cir.1983) ("a defendant is entitled to an instruction relating to his or her theory of defense if there was evidence presented at trial to support the theory"). Because the burden of going forward with clear and convincing evidence to show the applicability of one of the exceptions listed in section 952(a) falls on the defendant, not the government, and because Hill and Dobson did not produce such evidence, the district court's refusal to give the requested instruction was proper.
 
 
 33
 Hill and Dobson also challenge the district court's admission of evidence concerning prior criminal acts, the district court's denial of their motion for acquittal as to the charge of possession of cocaine, and the propriety of their sentences. We hold that Hill and Dobson's contentions on these issues are without merit.
 
 CONCLUSION
 
 34
 For the reasons stated above, we affirm the convictions and the judgments.
 
 
 35
 AFFIRMED.
 
 
 
 [1]
 The record contains no explanation as to the location of the missing kilogram of cocaine
 
 
 [2]
 In discussing 21 U.S.C. Sec. 841(a), the Murray court stated, "the government bears the burden of proving non-registration or non-entitlement once the defendant introduces evidence that he falls within one of the statutory exemptions or exceptions." 618 F.2d at 901
 
 
 [3]
 The instruction given was:
 Title 21, United States Code, Section 952(a), makes it a Federal crime or offense for anyone to knowingly import any controlled substance into the United States.
 Cocaine is a controlled substance within the meaning of the law.
 The Defendant can be found guilty of that offense only if all of the following facts are proved beyond a reasonable doubt:
 First: That the Defendant imported cocaine into the United States from a place outside thereof, as charged; and
 Second: That the Defendant did so knowingly and willfully.
 Third: That the amount of cocaine involved was at least five (5) kilograms.
 To 'import' a substance means to bring or transport that substance into the United States from some place outside the United States.
 
 
 [4]
 This instruction is adapted from the Federal Criminal Jury Instructions of the Seventh Circuit