[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

Nos. 10-15033 & 10-15333
Non-Argument Calendar
_____

D.C. Docket Nos. 1:09-cr-20628-WPD-11


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus


LUCY SEGUROLA,
MAYELIN SALAS,
a.k.a. Mayelin Campo,

Defendants-Appellants.


_____

Appeals from the United States District Court
for the Southern District of Florida
_____

(July 11, 2012)

Before EDMONDSON, CARNES and MARTIN, Circuit Judges.

PER CURIAM:

Mayelin Salas and Lucy Segurola appeal their convictions for conspiracy to commit mail and wire fraud, in violation of 18 U.S.C. § 1349. Salas also challenges her conviction for mail fraud, in violation of 18 U.S.C. § 1341. Together, the two defendants raise six issues. After careful review, we affirm.

I.

Salas and Segurola were indicted along with a number of other defendants as participants and co-conspirators in a mortgage fraud scheme. The government alleged that participants in the scheme recruited "straw borrowers" to take part in the purchase of various residential properties.[1] The "straw borrowers" agreed to pose as purchasers, "all the while understanding that they would neither be the true owners nor responsible for the monthly mortgage payments." In exchange for a fee, the "straw borrowers" allowed their identities and credit information to be used to obtain mortgage loans.

One of the purportedly fraudulent aspects of the scheme was the use of false HUD-1 settlement statement forms. A HUD-1 form is a standard form required to be executed at all real estate closings. According to the government, lenders were given HUD-1 forms that falsely specified higher purchase prices than those stated

---

[1] The allegations here reflect those in the superseding indictment, filed in May 2010.

in the original HUD-1 forms. The participants in the fraud then diverted the funds obtained through this "double-HUD" scheme. The government alleged that the mortgage fraud extended to thirty-four properties. According to the government, Salas was one of the defendants who recruited straw borrowers. The government also alleged that Salas—under the name of Mayelin Campos—and Segurola both served as straw borrowers.

## II.

On appeal, Salas argues that the district court erred in denying her motion for a bill of particulars. We are not persuaded by this argument.

"The purpose of a bill of particulars is to inform the defendant of the charge against [her] with sufficient precision to allow [her] to prepare [her] defense, to minimize surprise at trial, and to enable [her] to plead double jeopardy in the event of a later prosecution for the same offense." United States v. Warren, 772 F.2d 827, 837 (11th Cir. 1985). The denial of a request for a bill of particulars is reviewed for abuse of discretion. Id. "Proof of abuse requires a showing of actual surprise at trial and prejudice to the defendant's substantial rights . . . ." United States v. Colson, 662 F.2d 1389, 1391 (11th Cir. 1981).

Salas argues that the government's claim, made during its opening statement, that she was involved in a double-HUD scheme in connection with the

purchase of the property located at 770 East 57th Street, Hialeah, Florida, came as a "complete surprise" to her. However, the superseding indictment specifically described the double-HUD scheme as one of the fraudulent aspects of the scheme. It also identified the property located at 770 East 57th Street, Hialeah, Florida, as one of the properties encompassed by the scheme. We therefore think the superseding indictment gave "adequate notice" to Salas of the government's charge. See Warren, 772 F.2d at 837.

Salas also argues that she was surprised by the government's argument that she was involved in the allegedly fraudulent purchase of the property located at 4750 West 3rd Avenue, Hialeah, Florida. According to Salas, the government said during its opening statement that she served as a straw borrower in that transaction, along with co-defendant Jorge Egeraige. The record, however, does not support this argument. The government only argued that Salas recruited Egeraige to be a straw borrower, and that is consistent with the allegations in the superseding indictment.[2]

---

[2] To the extent Salas claims that the government could not otherwise have linked her to the 4750 West 3rd Avenue transaction, we must also reject that argument. Salas was not charged with any substantive count involving that property. So, that transaction could have been relevant only for the conspiracy charge. Under our precedent, however, the government is not required to disclose in advance "all overt acts that might be proven at trial." United States v. Rosenthal, 793 F.2d 1214, 1227 (11th Cir. 1986); see also Colson, 662 F.2d at 1391.

4

Finally, Salas argues that the government should have been required to identify the specific documents related to the 770 East 57th Street transaction that it thought contained fraudulent signatures. She asserts that the government's refusal to do so prevented her from adequately preparing for trial. But Salas does not explain how her defense at trial would have been different had the government identified, in advance, the specific signatures. Also, Salas did not seek a continuance after receiving the admittedly voluminous discovery materials. Thus, her claim that she was prejudiced is not persuasive. See Warren, 772 F.2d at 837.

## III.

Salas asserts that there was a material variance between the allegations in the superseding indictment and the proof offered at trial. We reject this argument.

"The standard of review for whether there is a material variance between the allegations in the indictment and the facts established at trial is twofold: First, whether a material variance did occur, and second, whether the defendant suffered substantial prejudice as a result." United States v. Lander, 668 F.3d 1289, 1295 (11th Cir. 2012) (quotation marks omitted). "A variance occurs when the evidence at trial establishes facts materially different from those alleged in the indictment." United States v. Caporale, 806 F.2d 1487, 1499 (11th Cir. 1986) (quotation marks omitted). Substantial prejudice is present if "the proof at trial

5

differed so greatly from the charges that [the defendant] was unfairly surprised and was unable to prepare an adequate defense." United States v. Richardson, 532 F.3d 1279, 1286–87 (11th Cir. 2008) (quotation marks omitted).

Here, Salas asserts that a material variance occurred when the government sought to prove that the 770 East 57th Street transaction involved a double-HUD scheme. This arguments fails because the superseding indictment specifically described the double-HUD scheme as a facet of the conspiracy. It also identified the property located at 770 East 57th Street as one of the properties encompassed by the fraud. Separately, Salas emphasizes that at trial, the government portrayed the sellers of that property as victims of the scheme. But that is entirely consistent with the allegation that the lender was also a victim of the fraud. We cannot say there was a material variance in this case.

IV.

Salas argues that there was not enough evidence to support her convictions for conspiracy and for mail fraud. Segurola likewise challenges the sufficiency of the evidence as to her conviction for the conspiracy charge. Neither succeeds.

A.

We review de novo whether evidence is sufficient to sustain a jury verdict, viewing the evidence in the light most favorable to the government and drawing

6

all reasonable inferences in favor of the jury's verdict. United States v. Jiminez, 564 F.3d 1280, 1284 (11th Cir. 2009). Evidence is sufficient to support a conviction if "a reasonable trier of fact could find . . . guilt beyond a reasonable doubt." Id. (quotation marks omitted). Thus, "it is not enough for a defendant to put forth a reasonable hypothesis of innocence." Id. (quotation marks and alterations omitted). Rather, the defendant must show that "the jury could not have found [her] guilty under any reasonable construction of the evidence." United States v. Chastain, 198 F.3d 1338, 1351 (11th Cir. 1999).

B.

The offenses of mail and wire fraud "require that a person (1) intentionally participates in a scheme or artifice to defraud another of money or property, and (2) uses or causes the use of the mails or wires for the purpose of executing the scheme or artifice." United States v. Bradley, 644 F.3d 1213, 1238 (11th Cir. 2011) (quotation marks omitted). "Proof of intent to defraud is necessary to support convictions for mail and wire fraud." Id. at 1239. "A jury may infer an intent to defraud from the defendant's conduct." United States v. Maxwell, 579 F.3d 1282, 1301 (11th Cir. 2009). Thus, "[e]vidence that a defendant personally profited from a fraud may provide circumstantial evidence of an intent to

participate in that fraud." United States v. Naranjo, 634 F.3d 1198, 1207 (11th Cir. 2011).

To obtain a conviction for conspiracy to commit mail and wire fraud, the government must prove that the defendant "knew of and willfully joined in the unlawful scheme to defraud." Maxwell, 579 F.3d at 1299. "[C]ircumstantial evidence can supply proof of knowledge of the scheme." Id.

## C.

Salas argues that there was not enough evidence to show that she had an intent to defraud with respect to the 770 East 57th Street transaction. Viewing the record in the light most favorable to the verdict, we cannot agree. There was evidence that the original owners of 770 East 57th Street agreed to sell the property to Salas for $130,000. But a sales and purchase contract that was submitted to the lender listed a sales price of $280,000. The contract also listed $46,399.87 as the amount of "cash to seller." But there was evidence that the sellers never received that amount of money.

Aside from the sales and purchase contract, there was evidence that the loan application submitted to the lender contained other false information. For instance, the application stated that Salas had been employed for three-and-a-half years at a company called Acosta SH. A W-2 form stated that Salas made $73,500

8

in 2004, the year before the purchase. But at trial, the owner of Acosta testified that the firm never did business and never had any employees. The evidence showed that, based on the information in the application and the sales and purchase contract, the lender agreed to disburse loans of about $279,000.

Finally, two witnesses testified that they had agreed to serve as straw borrowers and that they generally received payments in increments of $5,000 in exchange for their personal information. Consistent with that testimony, there was evidence that Salas received a check for $5,000. In our view, all of this evidence provided a reasonable basis upon which the jury could have found an intent to defraud. See Maxwell, 579 F.3d at 1299, 1301 (noting that the requisite intent for the substantive count and the conspiracy count may be established by circumstantial evidence); see also Naranjo, 634 F.3d at 1207 (noting that evidence of personal gain can demonstrate intent to participate in a fraud).

## D.

Segurola was also convicted of conspiracy to participate in the mortgage fraud. Like Salas, she asserts that there was not enough evidence to show that she had the requisite intent. We are not persuaded by this argument. The evidence showed, and Segurola did not dispute, that she gave her personal information so that it could be used to obtain three different mortgage loans. And there was also

9

evidence that, consistent with the remuneration that other straw borrowers received, Segurola was paid a total of $15,000. In light of all of this, the jury reasonably could have found that Segurola knew of the fraudulent nature of the scheme and willfully participated in it. See Maxwell, 579 F.3d at 1299, 1301; see also Naranjo, 634 F.3d at 1207.

V.

Next, Salas argues that, even if the evidence were sufficient to sustain her convictions, the district court nonetheless should have granted her motion for a new trial based on the weight of the evidence. This argument is also unavailing.

We have recognized that a district court may grant a motion for a new trial if the jury verdict "is contrary to the weight of the evidence." United States v. Martinez, 763 F.2d 1297, 1312 (11th Cir. 1985). But we have emphasized that such motions "are not favored" and should be granted "sparingly and with caution." Id. at 1313. To warrant a new trial, "[t]he evidence must preponderate heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand." Id. (emphasis added). A district court's decision to deny a motion for a new trial is reviewed for abuse of discretion. Id. at 1312.

Here, we cannot say that the district court erred in determining that "the evidence did not preponderate heavily against the jury's verdict." United States v.

10

Cox, 995 F.2d 1041, 1044 (11th Cir. 1993). Although the evidence that the government presented at trial was not overwhelming, it was more than sufficient to support the jury's ultimate decision. The district court did not abuse its discretion in concluding that this is not "one of those exceptional cases" in which a new trial is warranted in order to avoid a miscarriage of justice. Martinez, 763 F.2d at 1314 (quotation marks omitted); see also Butcher v. United States, 368 F.3d 1290, 1297 n.4 (11th Cir. 2004) (noting that a new trial based on the weight of the evidence is appropriate only in "rare" cases).

## VI.

Finally, Salas suggests that at trial, the government violated Giglio v. United States, 405 U.S. 150, 92 S. Ct. 763 (1972). We also reject this argument. Under Giglio, the government may not knowingly present testimony that is "false or misleading" or otherwise "make a false statement to the jury." Hammond v. Hall, 586 F.3d 1289, 1306–07 (11th Cir. 2009). A defendant is "entitled to a new trial if there is any reasonable likelihood that the false testimony [or statement] could have affected the judgment of the jury." Smith v. Sec'y, Dep't of Corr., 572 F.3d 1327, 1333 (11th Cir. 2009) (quotation marks omitted).

Here, Salas asserts that the government argued three false inferences to the jury. First, Salas asserts that the government argued that she was aware of the

11

double-HUD nature of the 770 East 57th Street transaction, but that the government knew that the leader of the mortgage fraud, Magile Cruz, "had never revealed the double-HUD scheme" to her. In support of this argument, Salas cites the government's disclosure, made after trial, that "[it] is not aware of any evidence that Cruz disclosed the double HUD scheme to [Salas]." But the fact that Cruz may not have specifically revealed to Salas the double-HUD nature of the 770 East 57th Street transaction does not mean that Salas could not have become aware of that in some other way. Salas has failed to "conclusively show that the [government's] statement was actually false." Maharaj v. Sec'y for Dep't of Corr., 432 F.3d 1292, 1313 (11th Cir. 2005).

Second, Salas argues that the government falsely argued to the jury that she received a check for $4,900 in return for recruiting straw borrowers. She asserts that the government knew that Cruz "admitted to having given [that] money" to Salas to help Salas repair her property. But she does not cite, either in her initial or reply brief, any portion of the record that would show that Cruz made such an admission to the government. We conclude that this argument is waived. See Carmichael v. Kellogg, Brown & Root Servs., Inc., 572 F.3d 1271, 1283 (11th Cir. 2009). See generally Fed. R. App. P. 28(a)(9)(A) (requiring an appellant to

develop an argument by providing "citations to the . . . parts of the record on which [she] relies").

Third, Salas states that the government falsely argued that when she purchased the 770 East 57th Street property, she "kn[ew] she could not afford the mortgage payments." She asserts that the government was aware from its interview of a co-defendant, Sonya Balmaseda, that she planned on using rental income to make the mortgage payments. Again, she does not cite, either in her initial brief or reply brief, any portion of the record that would show Balmaseda made this statement to the government. Thus, this argument is also waived. See Carmichael, 572 F.3d at 1283.[3]

VII.

For the reasons stated above, we affirm the judgments of the district court.

**AFFIRMED.**

---

[3] Salas argues in her reply brief that the government also violated Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194 (1963), by failing to disclose certain exculpatory evidence. We do not address this belated argument. It is well established that arguments raised for the first time in an appellant's reply brief are deemed waived. See United States v. Levy, 379 F.3d 1241, 1244 (11th Cir. 2004).