UNITED STATES of America

v.

**Ifeanyichukwu Eric ABAKPORO and Latanya Pierce, Defendants.**

**No. S2 12 CR 340(SAS).**

United States District Court, S.D. New York.

April 26, 2013.

remove the restricted legend from a Rule 144 stock).

---

**385**

*OPINION AND ORDER*

SHIRA A. SCHEINDLIN, District Judge.

Defendant Ifeanyichukwu Eric Abakporo moves to dismiss Count One of the S2 Superseding Indictment. Abakporo also moves for inspection of the grand jury minutes and the production of previously demanded discovery.[1] Defendant Latanya Pierce moves for severance from the trial of her co-defendant pursuant to *Crawford v. Washington.*[2] Pierce also moves for: (1) a bill of particulars; (2) *Bruton*[3] relief with regard to certain post-arrest statements made by Abakporo; (3) production of the aforementioned discovery; and (4) disclosure of all *Brady*[4] material.[5] For the following reasons, defendants' motions are granted in part and denied in part.

## I. BACKGROUND

On April 7, 2012, the Government filed the original Indictment which charged defendants with conspiracy to commit wire fraud, wire fraud, conspiracy to commit bank fraud, and bank fraud. All four counts related to property located at 1070 St. Nicholas Avenue, New York, New York. The Indictment did not allege that any entities controlled by both defendants were used in the conspiracy. On November 27, 2012, the Government filed the S1 Superseding Indictment which charged defendants with conspiracy to commit wire fraud, conspiracy to commit bank fraud, and bank fraud. All three counts related

Lee A. Ginsberg, Esq., Freeman, Nooter & Ginsberg, New York, NY, for Defendant Abakporo.

Michael T. Cornacchia, Esq., New York, NY, for Defendant Pierce.

Michael D. Lockard, Ryan P. Poscablo, Assistant United States Attorneys, New York, NY, for the Government.

1. *See* 2/20/13 Letter from Maurice H. Sercarz, attorney for defendant Latanya Pierce, to Assistant United States Attorneys Ryan P. Poscablo and Michael D. Lockhard (the "February 20th Letter"), Ex. G to the 3/1/13 Declaration of Maurice H. Sercarz ("Sercarz Decl."); 2/21/13 Letter from Lee Alan Ginsberg, attorney for defendant Abakporo, to AUSAs Poscablo and Lockhard (the "February 21st Letter"), Ex. A to the Motion to Dismiss Count 1 of the Second Superseding Indictment, for Inspection of the Grand Jury Minutes and for

Discovery Previously Requested from the Government ("Abakporo Mem.").

2. 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).

3. *See Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).

4. *See Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

5. *See* Latanya Pierce's Omnibus Motion.

to 1070 St. Nicholas Avenue. The wire fraud conspiracy count was now configured as a single, dual-object conspiracy which had the following two objects: (1) a scheme to defraud the owner of 1070 St. Nicholas Avenue; and (2) a scheme to defraud a financial institution by fraudulently obtaining a mortgage loan secured by the property. Again, the S1 Superseding Indictment did not allege that any entities controlled by both defendants were used in the conspiracy.

On January 24, 2013, the Government filed the S2 Superseding Indictment (the "S2 Indictment"). Count One charges defendants with conspiracy to commit wire fraud and bank fraud while Count Two charges bank fraud. The S2 Indictment charges defendants with a scheme to defraud lending institutions and individuals and engaging in fraudulent real estate and mortgage transactions involving the following properties:

> 99–21 215th Street, Queens, New York
> 50 Carnegie Avenue, Elmont, New York
> 143 Quincy Street, Brooklyn, New York
> 1308 Caton Avenue, Brooklyn, New York
> 1070 St. Nicholas Avenue, New York, New York
> 215–11 111th Road, Cambria Heights, New York
> 100–24 197th Street, Hollis, New York

The only unifying thread common to all of the above properties is the alleged use of "straw purchasers and borrowers." The types of transactions involving straw purchasers and borrowers fall into the following three categories:

> In furtherance of the scheme to defraud, IFEANYICHUKWU ERIC ABAKPORO and LATANYA PIERCE, the defendants, together with others known and unknown, used straw purchasers

and straw borrowers ("straws") to buy properties using mortgage loans from financial institutions and mortgage lenders. [1] In some instances, ABAKPORO and PIERCE used misappropriated personal identification of others to engage in straw transactions without the individuals' knowledge or consent in order to fraudulently obtain mortgage loans in their names. [2] In other instances, ABAKPORO and PIERCE caused straws to sign or initial documents without the straws knowing the true nature of the documents. [3] In yet other instances, ABAKPORO and PIERCE participated in straw transactions where the straws knew that they would not, in fact, own or control the subject properties that they purported to buy, but the straws expected to be compensated for allowing their credit to be used to obtain mortgage loans.[6]

In addition, the S2 Indictment alleges that from 2003 through 2012, defendants Abakporo and Pierce jointly controlled the following entities: Creekhill Realty, 348 Riverdale, and 559 St. John's Place.[7]

## II. LEGAL STANDARDS

### A. Relation Back

■ In determining whether a superseding indictment relates back to an underlying indictment, courts consider "whether the additional pleadings allege violations of a different statute, contain different elements, rely on different evidence, or expose the defendant to a potentially greater sentence."[8] In other words, a superseding indictment relates back to a prior, pending indictment "if and only if it does not broaden the charges made in the first indictment."[9] As explained by the Second Circuit, "*Grady* and its progeny impose a two-part test for relation back of a superceding indictment: the original in-

---

**6.** S2 Indictment ¶ 4.

**7.** *See id.* ¶ 3.

**8.** *United States v. Salmonese,* 352 F.3d 608, 622 (2d Cir.2003).

**9.** *United States v. Grady,* 544 F.2d 598, 602 (2d Cir.1976).

dictment must be validly pending, and the superceding indictment must not materially broaden or substantially amend the charges."[10]

■ "Superseding indictments have been deemed timely when they simply added detail to the original charges, narrowed rather than broadened the charges, contained amendments as to form but not substance, or were otherwise trivial or innocuous."[11] Where the purpose of a superseding indictment is to add additional overt acts, the superseding indictment will relate back only "where the additional overt acts simply flesh out or provide more detail about the originally charged crime without materially broadening or amending it."[12]

## B. Statute of Limitations

■ "When conspiracy requires proof of an overt act, as in this case, the statute of limitations is satisfied if the Government proves that the conspiracy operated within the five-year period preceding the date of the indictment and that a conspirator knowingly committed an overt act in furtherance of the conspiracy within that same period."[13] Thus, conspiracy to commit wire fraud is generally subject to a five-year statute of limitations.[14] However, a ten-year statute of limitations applies to conspiracy to commit wire fraud and substantive wire fraud if the offense "affects a financial institution."[15] For all relevant time periods, the term "financial institution" is defined to include a depository institution insured by the Federal Deposit Insurance Corporation ("FDIC").[16] Fraud against a mortgage lender that is a wholly-owned subsidiary of an FDIC-insured bank is subject to the ten-year statute of limitations.[17]

## C. Duplicity

■ "An indictment is duplicitous if it joins two or more distinct crimes in a single count."[18] The policy considerations against the filing of duplicitous indictments include the following:

> avoiding the uncertainty of whether a general verdict of guilty conceals a finding of guilty as to one crime and a finding of not guilty as to another, avoiding the risk that the jurors may not have been unanimous as to any one of the crimes charged, assuring the defendant adequate notice, providing the basis for appropriate sentencing, and protecting against double jeopardy in a subsequent prosecution.[19]

"A duplicitous indictment, which alleges several offenses in the same count, must be distinguished from 'the allegation in a single count of the commission of a crime by several means,'" which is not duplicitous.[20]

---

10. *United States v. Rutkoske,* 506 F.3d 170, 175 (2d Cir.2007).

11. *United States v. Ben Zvi,* 168 F.3d 49, 54 (2d Cir.1999).

12. *Salmonese,* 352 F.3d at 622.

13. *Rutkoske,* 506 F.3d at 174–75 (citing 18 U.S.C. § 3282).

14. *See* 18 U.S.C. § 3282(a).

15. *Id.* § 3293(2).

16. *See id.* § 20(1). Effective May 9, 2009, the term "financial institution" was broadened to include mortgage lending businesses. *See id.* § 20(10) (amended by Pub. Law 111–21, § 2(a)(3), 123 Stat. 1617).

17. *See United States v. Bouyea,* 152 F.3d 192, 195 (2d Cir.1998).

18. *United States v. Aracri,* 968 F.2d 1512, 1518 (2d Cir.1992).

19. *United States v. Margiotta,* 646 F.2d 729, 733 (2d Cir.1981).

20. *Aracri,* 968 F.2d at 1518 (quoting *United States v. Murray,* 618 F.2d 892, 896 (2d Cir. 1980)).

 "A conspiracy indictment presents 'unique issues' in the duplicity analysis because 'a single agreement may encompass multiple illegal objects.'"[21] Thus, "it is well established that '[t]he allegation in a single count of a conspiracy to commit several crimes is not duplicitous, for [t]he conspiracy is the crime and that is one, however diverse its objects.'"[22] "Whether the object of a single agreement is to commit one or many crimes, it is in either case that agreement which constitutes the conspiracy which the statute punishes. The one agreement cannot be taken to be several agreements and hence *several conspiracies* because it envisages the violation of several statutes rather than one."[23] Moreover, "acts that could be charged as separate counts of an indictment may instead be charged in a single count if those acts could be characterized as part of a single continuing scheme. As long as the essence of the alleged crime is carrying out *a single scheme to defraud*, then aggregation is permissible."[24]

## D. Bill of Particulars

 Federal Rule of Criminal Procedure 7(f) "permits a defendant to seek a bill of particulars in order to identify with sufficient particularity the nature of the charge pending against him, thereby enabling defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense."[25]

The decision whether to grant a bill of particulars pursuant to [Federal Rule of Criminal Procedure] 7(f) rests within the sound discretion of the district court. *See United States v. Cephas*, 937 F.2d 816, 823 (2d Cir.1991). "Generally, if the information sought by defendant is provided in the indictment or in some acceptable alternate form, no bill of particulars is required." *Bortnovsky*, 820 F.2d at 574. In addition, "[t]he proper scope and function of a bill of particulars is not to obtain disclosure of evidence or witnesses to be offered by the Government at trial...." *United States v. Strawberry*, 892 F.Supp. 519, 526 (S.D.N.Y.1995) (citing *United States v. Salazar*, 485 F.2d 1272, 1278 (2d Cir. 1973)).[26]

 A bill of particulars is not a matter of right.[27] A bill of particulars is required only where the indictment is so general that it does not advise the defendant of the specific acts of which he is accused.[28] "It is not enough that the information would be useful to the defendant; if the defendant has been given adequate notice of the charges against him, the government is not required to disclose additional details about its case. The court must be cognizant of the fact that a bill of particulars confines the government's evidence at trial to the particulars furnished."[29]

The bill of particulars may not be used for the purpose of discovering the gov-

---

**21.** *Id.* (quoting *Murray*, 618 F.2d at 896).

**22.** *Id.* (quoting *Murray*, 618 F.2d at 896 (brackets in original) (internal quotation marks omitted)).

**23.** *Braverman v. United States*, 317 U.S. 49, 53, 63 S.Ct. 99, 87 L.Ed. 23 (1942) (emphasis added).

**24.** *United States v. Tutino*, 883 F.2d 1125, 1141 (2d Cir.1989) (emphasis added).

**25.** *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir.1987) (citing *Wong Tai v. United States*, 273 U.S. 77, 82, 47 S.Ct. 300, 71 L.Ed. 545 (1927)).

**26.** *United States v. Nachamie*, 91 F.Supp.2d 565, 570 (S.D.N.Y.2000).

**27.** *See United States v. Gibson*, 175 F.Supp.2d 532, 536 (S.D.N.Y.2001).

**28.** *See United States v. Torres*, 901 F.2d 205, 234 (2d Cir.1990).

**29.** *United States v. Payden*, 613 F.Supp. 800, 816 (S.D.N.Y.1985).

ernment's evidence, however, if the defendant demonstrates the requisite necessity for the information, the bill must be granted, regardless of whether it will result in the disclosure of the government's evidence. In deciding whether the bill of particulars is needed, the court must determine whether the information sought has been provided elsewhere, such as in other items provided by discovery, responses made to unobjected requests for particulars, prior proceedings, and the indictment itself.[30]

Thus, it is not the function of a bill of particulars to allow defendants to preview the Government's evidence and theory of its case; "[a] bill of particulars is not a general investigative tool, a discovery device or a means to compel the government to disclose evidence or witnesses to be offered at trial." [31]

## III. DISCUSSION

### A. Relation Back

■ It is indisputable that the S2 Indictment charges additional transactions over a longer time period than the earlier indictments. The Government argues that the "[S2] Indictment does not allege violations of a new statute or contain different elements, and does not expose the defendant[s] to a potentially greater statutory maximum sentence. There are no new co-conspirators charged or identified and the additional transactions are, like the transactions in the underlying indictments, part of a scheme to defraud property owners and lenders in connection with real estate and mortgage loan transactions." [32] The Government fails to acknowledge that the S2 Indictment contains a substantial amount of new evidence by way of six additional properties. And while the statutory maximum sentence may not change as a result of adding these properties, defendants face significantly higher sentences under the United States Guidelines because the loss amount will undoubtedly increase. I therefore find that the S2 Indictment does not relate back to either the S1 Superseding Indictment or the original Indictment.

### B. Overt Acts Outside the Limitations Period

The Government argues that the S2 Indictment is timely even without the relation-back doctrine.[33] According to the Government, the ten-year statute of limitations period applies and all of the charged acts were committed after January 24, 2003.[34] In determining which statute of limitations period applies—the five-year or ten-year period—the following table summarizes the financial institution(s) associated with each property, as well as the dates of the last overt acts directed at those institutions:

| No. | Property | Dates | Lending Entity |
|---|---|---|---|
| 1 | 99–21 215th St., Queens | Sept. 2006 | Fremont Invest. & Loan Co. |
| 2 | 50 Carnegie Ave., Elmont | Oct. 2006 | BNC Mortgage, Inc. |
| 3 | 143 Quincy St., Brooklyn | Oct. 2005 | Option One Mortgage Corp. |

**30.** *Id.* (citations omitted).

**31.** *Gibson,* 175 F.Supp.2d at 537.

**32.** Government's Response to Defendants' Second Pre–Trial Motions ("Gov't Mem.") at 4–5.

**33.** *See id.* at 5.

**34.** *See id.* The S2 Indictment was filed on January 24, 2013, thereby extending the ten-year statute of limitations to January 24, 2003.

| 4 | 1308 Caton Ave., Brooklyn | Jan. 2005 | Long Beach Mortgage Co. |
|---|---|---|---|
| | 1308 Caton Ave., Brooklyn | Dec. 2005 | Fremont Invest. & Loan Co. |
| 5 | 1070 St. Nicholas Ave., NY | 2007 | Washington Mutual Bank |
| 6 | 215–11 111th Road, Cambria Heights | 2007 | Fremont Invest. & Loan Co. |
| 7 | 100–24 197th Street, Hollis | Feb. 2006 | Option One Mortgage Corp. |

 Defendants argue that Fremont Investment & Loan Co. ("Fremont") and Option One Mortgage Corp. are not "financial institutions" which qualify for the ten-year limitations period. Defendants characterize Fremont as a "subprime mortgage lender and not a subsidiary of any bank." [35] However, the Government correctly points out that, according to the S2 Indictment, Fremont is a "financial institution whose deposits were insured by the Federal Deposit Insurance Corporation." [36] Crediting this allegation, as I must at this stage of the proceedings, the five-year limitations period appears to apply only to the overt acts directed at Option One Mortgage Corp. (Properties # 3 and 7).

 While the overt acts associated with Option One Mortgage Corp. may be outside the applicable five-year limitations period, their inclusion in the S2 Indictment is nonetheless valid. "It is well settled that conspiracy is a continuing offense, and that an indictment may properly plead overt acts outside the limitations period." [37] Because a conspiracy is a continuing offense, "a jury may consider each and all of a defendant's actions in furtherance of the conspiracy so long as the indictment is brought within [ten] years of the last overt act." [38] Thus, transactions involving Properties # 3 and 7 are properly included in the S2 Indictment. Because several overt acts fall within the ten-year limitations period, Count One of the S2 Indictment is not time-barred.

## C. S2 Indictment Is Duplicitous

 The S2 Indictment is, however, duplicitous in that it conflates conspiracy to commit wire fraud with conspiracy to commit bank fraud in one count. This is not the situation where a single count of conspiracy includes the commission of several crimes as its objective. For example, a conspiracy to distribute controlled substances may consist of an agreement to

35. Abakporo Mem. at 7. Defendants concede that BNC Mortgage is a subsidiary of BNC National Bank and that Long Beach Mortgage Co. is a subsidiary of Washington Mutual Bank. *See id.* Defendants posit that Option One Mortgage Corp. is a subprime mortgage lender and not a subsidiary of any bank.

36. S2 Indictment ¶ 10(a)(1). *See also* Gov't Mem. at 7 n. 3 (stating that "the evidence at trial will show that Fremont was a Federal Reserve non-member bank whose deposits were insured by the FDIC from 1984 until 2008, when the bank became inactive and went into liquidation.").

37. *United States v. Mermelstein,* 487 F.Supp.2d 242, 256 (E.D.N.Y.2007); *United States v. Saneaux,* 365 F.Supp.2d 493, 505 (S.D.N.Y.2005) ("It is well settled that a con-spiracy charge is timely filed if only one of a number of overt acts occurred within five years of the indictment; inherent in that rule is the government's ability to plead and prove earlier overt acts.").

38. *United States v. Jake,* 281 F.3d 123, 130 n. 6 (3d Cir.2002) (citing *United States v. Johnson,* 165 F.2d 42, 45 (3d Cir.1947) (overt acts committed outside the statute of limitations period for a conspiracy to obstruct justice may be proved "to show the existence and continuance of the conspiracy even though there could have been no prosecution for any substantive offense charged as an overt act")). *Accord Luparella v. United States,* 335 Fed. Appx. 212, 215 (3d Cir.2009) (citing *Johnson* for the proposition that "[a]cts that occur outside of the statute of limitations period may be included as overt acts").

distribute heroin as well as an agreement to distribute cocaine. While the agreements to distribute heroin and cocaine are separate crimes that could be charged in separate counts in an indictment,[39] they are subsumed within the overall conspiracy to distribute controlled substances. Thus, they may be included within a single conspiracy count.

Here, unlike the example above, the Government has chosen to charge two separate conspiracies in Count One—conspiracy to commit wire fraud and conspiracy to commit bank fraud—each of which has different elements. By charging both conspiracies in a single count, the Government has invited the very problems to which the prohibition against duplicity is directed (jury unanimity, notice, sentencing). However, because duplicity is a pleading rule, a duplicitous count is not fatal where the charges can be reformulated.[40] Accordingly, the appropriate remedy is to decouple the transactions found in Count One and reformulate the S2 Indictment by separating the two conspiracies into two separate counts.[41] The Government is directed to reconfigure the counts in yet a third superseding indictment, which must be filed by May 3, 2013.

## D. Inspection of Grand Jury Minutes

Abakporo renews his request to inspect the grand jury minutes even though this issue was ruled on previously. At a conference on January 29, 2013, I stated: "There is no basis for me to believe that there was misconduct on the part of the government in securing certainly the most current indictment, and I can't see a basis to order disclosure of the Grand Jury minutes, which is a very rare event in any event in any case in the federal court." [42] Nothing has changed that would alter this ruling. Abakporo's second request to inspect the grand jury minutes is therefore denied.

## E. Additional Discovery

At the most recent status conference on February 1, 2013, defendants catalogued the areas in which the Government purportedly failed to provide discovery regarding some of the newly referenced allegations in the S2 Indictment. Defendants followed up with written letters demanding production of allegedly outstanding discovery.[43] The Government states that it has already produced, or will shortly produce, all of the materials in its possession. To ensure that the Government adheres to this response, the Government is directed to respond to both the February 20th and 21st Letters, identifying where and when the discovery requested in those letters has been, or will be, produced. The Government is ordered to produce any relevant discovery that it has not yet produced. The Government's response to defendants' discovery demands is due within twenty days of the date of this Opinion and Order.

## F. Bill of Particulars

Pierce seeks a bill of particulars detailing her participation with regard to the six

---

39. Assume, for purposes of this example, that the quantity of cocaine is ten kilograms and thus subject to 21 U.S.C. § 841(b)(1)(A), while the quantity of heroin is two-hundred and fifty grams, which is subject to 21 U.S.C. § 841(b)(1)(B).

40. *See United States v. Droms,* 566 F.2d 361, 363 n. 1 (2d Cir.1977).

41. After this decoupling, both conspiracy counts must have at least one overt act within the applicable limitations period in order to be timely.

42. Transcript of 1/29/13 Conference ("1/29/13 Tr.") at 30–31.

43. *See* February 20th Letter; February 21st Letter.

new properties (excluding 1070 St. Nicholas Avenue), stating:

> While the factual portion of the S-2 Indictment contains a brief recitation of the nature of the fraud, it says nothing about how Ms. Pierce allegedly acted in concert with Abakporo. This omission is particularly critical when it is considered that only weeks ago the government attributed most of the same conduct to Abakporo, alone. Under these circumstances, the defendant should be advised as to the nature of her participation in the alleged fraud with regard to each of the properties described in the Indictment.[44]

In particular, Pierce seeks the following details regarding the additional properties: the manner in which she allegedly used stolen personal identification information to obtain fraudulent mortgage loans (99–21 215th Street, 50 Carnegie Avenue, 143 Quincy Street); the manner in which she allegedly diverted portions of the loan proceeds to her own use (99–21 215th Street, 50 Carnegie Avenue, 1308 Caton Avenue); the manner in which she allegedly used information obtained from Straw # 4 to obtain fraudulent mortgage loans (215–11 111th Road, 100–24 197th Street); the manner in which she allegedly caused Straw # 4 to sell the properties for a profit (215–11 111th Road, 100–24 197th Street). In addition, Pierce also seeks: the manner in which she allegedly caused property to be transferred to another Straw Buyer, including each of the representations made to this Straw Buyer to induce him to participate in the fraudulent scheme (143 Quincy Street); the manner in which she allegedly caused Straw # 2 to acquire the property and obtain a fraudulent mortgage loan, including each of the representations made to Straw # 2 that caused him to transfer the property to another individual, and the manner in which the property was later transferred to 559 St. John's Place Company (1308 Caton Avenue).[45]

The Government, on the other hand, argues that a bill of particulars is not needed because the S2 Indictment itself, and the 33,000 pages of discovery already provided, more than adequately inform Pierce of the charges against her.[46] The Government further argues that it "is not required to provide detailed information about the charged conspiracy, such as overt acts, how and when the conspiracy was formed, or when each participant entered it." [47]

▇▇▇ Here, the Government has the better argument. In seeking a bill of particulars, Pierce is requesting evidentiary information concerning overt acts alleged in the S2 Indictment above and beyond the requisite notice of the charges against her. The S2 Indictment is sufficiently detailed to alert Pierce to the nature of the charges pending against her given that it includes a description of the means and methods of the alleged fraudulent scheme, specifically identifying the properties,[48] the dates and amounts of the mortgages obtained, and

---

44. Memorandum of Law in Support of Latanya Pierce's Omnibus Motion ("Pierce Mem.") at 6.

45. *See id.* at 7.

46. *See* Gov't Mem. at 10.

47. *Id.* at 9–10 (citing *United States v. Feola,* 651 F.Supp. 1068, 1132 (S.D.N.Y.1987) (stating that the "proper scope and function of a bill of particulars is not to obtain disclosure of evidence or witnesses to be offered by the Government at trial"), *aff'd,* 875 F.2d 857 (2d Cir.1989)). *United States v. Columbo,* No. 04 CR 273, 2006 WL 2012511, at *4 (S.D.N.Y. July 18, 2006) ("A bill of particulars is not intended to function as an investigative tool for the defense, and requests seeking evidentiary detail or a preview of the Government's legal theories must be denied.").

48. *See United States v. Segurola,* 484 Fed. Appx. 349, 351 (11th Cir.2012) (defendant charged with conspiracy to commit mail and wire fraud was not entitled to bill of particulars given that superseding indictment specifi-

the identities of defrauded lenders. When the S2 Indictment is coupled with the 33,-000 pages of discovery already produced by the Government, and the discovery to be produced by the Government, it becomes apparent that there is no need for a bill of particulars.[49] Moreover, Pierce's request would require the Government to lay out its proof three months before trial.[50] The level of detail requested by Pierce with regard to particular overt acts is simply not required.[51] Accordingly, Pierce's request for a bill of particulars is denied.

### G. *Bruton* Relief

Pierce renews her motion for *Bruton* relief with regard to Abakporo's post-ar-

rest statement(s). In *Bruton v. United States*,[52] the Supreme Court held that it would violate the Confrontation Clause to allow the confession of a non-testifying co-defendant that implicated the defendant to be used against that defendant.[53] Here, the Government has stated that Abakporo's post-arrest statement(s) [54] will be offered through the testimony of a law enforcement agent.[55] At the January 29, 2013 court conference, I stated that I could not evaluate the statement(s) in issue because I had neither the written statement(s) nor the proffer of the agent's testimony.[56] The Government was therefore ordered to proffer the testimony of the law enforcement agent for *in camera* review.[57] At a follow-up conference on February 1,

cally described the properties allegedly encompassed by the fraudulent scheme).

**49.** *See United States v. Binday,* 908 F.Supp.2d 485, 497–98 (S.D.N.Y.2012) (denying bill of particulars where voluminous discovery identified the straw buyers used by defendants to purchase life insurance policies). "However, '[t]he Government [does] not fulfill its obligation [to notify defendants of the charges against them] merely by providing mountains of documents to defense counsel who [are] left unguided' as to which documents are relevant to the charged conduct." *United States v. Kahale,* 789 F.Supp.2d 359, 371 (E.D.N.Y.2009) (quoting *Bortnovsky,* 820 F.2d at 575). This concern is allayed given the order directing the Government to respond to defendants' outstanding discovery demands. *See supra* Part III(E).

**50.** *See United States v. Mitlof,* 165 F.Supp.2d 558, 569 (S.D.N.Y.2001) ("The Government may not be compelled to provide a bill of particulars disclosing the manner in which it will attempt to prove the charges, the precise manner in which the defendant committed the crime charged, or a preview of the Government's evidence or legal theories.").

**51.** *See United States v. Carroll,* 510 F.2d 507, 509 (2d Cir.1975) ("There is no general requirement that the government disclose in a bill of particulars all the overt acts it will prove in establishing a conspiracy charge.");

*United States v. Walker,* 922 F.Supp. 732, 739 (N.D.N.Y.1996) ("[D]etailed evidence of a conspiracy is generally unavailable to defendants through a bill of particulars, and overt acts in furtherance of the conspiracy need not be disclosed."); *Feola,* 651 F.Supp. at 1132 ("It is well settled that defendants need not know the means by which it is claimed they performed acts in furtherance of the conspiracy nor the evidence which the Government intends to adduce to prove their criminal acts.").

**52.** 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).

**53.** *See id.* at 126, 137, 88 S.Ct. 1620.

**54.** *See* Affidavit for Search Warrant, Ex. E to the Sercarz Decl., ¶ 28(a)(f).

**55.** *See* Transcript of 2/1/13 Conference ("2/1/13 Tr.") at 5 ("That statement would come in through the testimony of the law enforcement officer, and we can prepare for your Honor what we expect that testimony to be.").

**56.** *See* 1/29/13 Tr. at 34 ("So you must proffer the testimony of this witness I would think first in-camera and pretrial, and then I would try to evaluate it.").

**57.** *See id.*

2013, the Government admitted that it had done nothing with regard to the *Bruton* issue since the previous conference.[58] Apparently, the Government has still done nothing despite its promise to produce a "Brutonized statement" and the proffer of the agent's testimony.[59] In fact, the Government has characterized Pierce's request for *Bruton* relief as premature.[60]

I do not find Pierce's request to be premature. Accordingly, the Government is hereby ordered to produce redacted "Brutonized" statement(s) to this Court and defendants within the next twenty days. The Government is further directed to proffer the law enforcement agent's testimony to this Court, for *in camera* review, within the same time frame. Only after evaluating the written "Brutonized" statement(s) and the agent's proffer will I be able to determine if there is, in fact, a potential *Bruton* violation. Regrettably, I must still reserve ruling on the *Bruton* issue pending the Government's submissions. Pierce's request for *Bruton* relief is therefore denied at this time, subject to reinstatement if needed.

### H. Severance

Pierce moves for severance from the trial of her co-defendant, Abakporo, on the ground that a joint trial will deprive her of her Confrontation Clause rights as stated in *Crawford v. Washington.* In *Crawford,* the Supreme Court held that the Sixth Amendment precluded the admission of out-of-court statements that are testimonial, unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness. According to Pierce, Abakporo has provided the Government with statements contained in affidavits, depositions, and examinations before trial ("EBT") in civil litigation associated with several of the properties referenced in the S2 Indictment. For example, Abakporo has testified at depositions and EBTs in the course of civil litigation involving 50 Carnegie Avenue and 1308 Caton Avenue. Abakporo has also offered affidavits in civil litigation involving 1070 Saint Nicholas Avenue.

Defendants rightfully assume that at least some of these statements will be offered into evidence, for the truth of the matter asserted therein, against Abakporo.[61] Furthermore, some of Abakporo's statements might be inadmissible hearsay statements as to Pierce. Moreover, the statements in dispute are sufficiently testimonial in nature such that their use against Pierce at a joint trial would violate her right of confrontation.[62] However, as an alternative to severance, Pierce asks this Court to reserve ruling on her severance motion and order the Government to produce, for *in camera* review, those statements made by Abakporo which the Government intends to use at trial. This sug-

---

58. *See* 2/1/13 Tr. at 5.

59. *Id.*

60. *See* Gov't Mem. at 11.

61. The Government is particularly evasive with regard to the content and nature of the statements in dispute. "For example, it may be the case that the Government will not seek to admit certain statements. It may be the case that certain statements are admissible for some purpose other than their truth. It may be that Pierce had the opportunity to cross-examine Abakporo at the time his prior testimony was taken and certain statements thus are admissible against Pierce for their truth. It may be the case that certain statements were made during the time of the conspiracy and in furtherance of it, and thus are admissible co-conspirator statements. It may be the case that an appropriately *Bruton*-ized version of certain statements would be admissible solely against Abakporo." *Id.* at 11–12 (footnote omitted).

62. *See id. See also United States v. Saget,* 377 F.3d 223, 228 (2d Cir.2004).

gestion is reasonable. Accordingly, the Government is directed to produce those Abakporo statements it intends to use at trial to this Court within the next twenty days and indicate its theory of admissibility as to each statement. I will reserve ruling on Pierce's severance motion pending receipt of the Government's submission.

## I. *Brady* Material

In *Brady v. Maryland,*[63] the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."[64] Material that is "favorable to an accused" includes not only evidence that affirmatively tends to exculpate the defendant, but also information that impeaches the credibility of the Government's witnesses.[65] In seeking the production of *Brady* material, Pierce states:

> [O]nly weeks ago the [G]overnment alleged that evidence regarding financial transactions referenced in the Indictment was to be offered against Abakporo, alone. It follows that there are documents, witness statements, or other evidence which led to the inference that Latanya Pierce was not involved in these transactions. That evidence ... falls within the ambit of *Brady.*[66]

Accordingly, Pierce seeks, *inter alia,* "all FBI 302 reports, documents, and other evidence indicating that Ms. Pierce was not involved in transactions relating to [a]

particular property" referenced in the S2 Indictment.[67] Pierce also seeks "all evidence bearing upon the credibility of each witness the [G]overnment intends to call at trial. . . ."[68] Thus, Pierce seeks both exculpatory *Brady* and impeachment *Brady.*

"Neither the Supreme Court, nor the Second Circuit, have ruled directly on whether there is a meaningful distinction between 'exculpatory *Brady*' and 'impeachment *Brady*' materials for purposes relating to the time within which such information must be disclosed."[69]

> Several other courts have discussed the issue at hand which often arises in the context of a potential, if not inherent conflict between the Government's obligations to disclose under *Brady,* and the Government's right to delay disclosure of certain information pursuant to the Jencks Act. Those cases suggest that the Court has some discretion with respect to directing the timing of such disclosure. *U.S. v. Campagnuolo,* 592 F.2d 852 (5th Cir.1979) (the Court interpreted *Brady* to require disclosure "at the appropriate" time, which often is prior to trial); *U.S. v. Perez,* 870 F.2d 1222 (7th Cir.1989) (the government's delay in disclosing *Brady* material violates due process only if the delay prevented the defendant from receiving a fair trial); *U.S. v. Ziperstein,* 601 F.2d 281 (7th Cir.1979) (a defendant receives a fair trial, notwithstanding delayed disclosure of *Brady* material, as long as disclosure is made before it is too late for the defendant to make use of any

---

**63.** 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

**64.** *Id.* at 87, 83 S.Ct. 1194.

**65.** *See United States v. Bagley,* 473 U.S. 667, 676–77, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985); *Giglio v. United States,* 405 U.S. 150, 154, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972).

**66.** Pierce Mem. at 12.

**67.** *Id.*

**68.** *Id.*

**69.** *United States v. Ali,* No. 12–CR–45S, 2013 WL 707303, at *2 (W.D.N.Y. Feb. 26, 2013) (footnote omitted).

benefits of the evidence). *But see U.S. v. Wilson*, 565 F.Supp. 1416 (S.D.N.Y. 1983) (impeachment material need not be produced prior to trial); *U.S. v. Biaggi*, 675 F.Supp. 790 (S.D.N.Y.1987) (information bearing on a witness's credibility may be turned over at the same time as [Jencks Act] materials); *U.S. v. Feldman*, 731 F.Supp. 1189 (S.D.N.Y. 1990) (it is sufficient for the government to disclose *Brady* impeachment materials along with [Jencks Act] materials).

With regard to exculpatory *Brady*, the Government's response is that it "is not aware of any *Brady* material, but if such material is identified or discovered, it will be produced in a timely manner." [70] With regard to impeachment *Brady*, the Government has stated that "[i]n a timely manner prior to trial, the Government will produce statements of witnesses expected to testify at trial pursuant to 18 U.S.C. § 3500 and *Giglio* material, if any, relating to those witnesses." [71] This Court cannot order the production of *Brady* material that does not exist. In an abundance of caution, however, the Government is ordered to review its files to confirm whether there is, in fact, any exculpatory *Brady* or impeachment *Brady* material. The Government is directed to produce any exculpatory *Brady* forthwith and any impeachment *Brady* at the time it produces its Jencks Act (section 3500) materials. The Government is also reminded that its *Brady* obligations are ongoing.

## IV. CONCLUSION

For the foregoing reasons, the various motions brought by defendants Abakporo and Pierce are granted in part and denied in part. The Clerk of the Court is directed to close these motions (Docket Entries # 61 and 64). A status conference is scheduled for May 21, 2013, at 4:30 p.m.

SO ORDERED.